## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 49946

| | | |
|---|---|---|
| In the Matter of the Guardianship of:<br>Jane Doe (2022-43), A Minor Child.<br>------------------------------------------------------------<br><br>NATASHA RAY,<br><br>    Petitioner-Appellant,<br><br>and<br><br>JANE DOE (2022-43)<br><br>    Minor Child-Appellant,<br><br>v.<br><br>KAYLA MARIE MORGAN-SMART<br>and ANTHONY LOWMAN,<br><br>    Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Boise, January 2025 Term<br><br>Opinion Filed: February 27, 2025<br><br>Melanie Gagnepain, Clerk |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Michael J. Reardon, District Judge, and Christopher Bieter, Magistrate Judge.

The decisions of the district court are <u>affirmed</u>. Seiniger's petition to intervene and notices of joinder are <u>stricken</u>.

Seiniger Law Office, Greenville, South Carolina. Wm. Breck Seiniger, Jr.

Natasha Ray, Eagle, Appellant Pro Se.

Kayla Marie Morgan-Smart, Nampa, and Anthony Lowman, Kuna, Respondents Pro Se.

—————————————

BRODY, Justice.

This appeal addresses the appointment of counsel for a child in a guardianship proceeding and an appellant's failure to address the district court's discretionary decisions to dismiss an intermediate appeal based on the failure to file a timely opening brief. For the reasons set forth

1

below, we affirm the decisions of the district court and strike the petition to intervene and notice of joinder filed by attorney Wm. Breck Seiniger, Jr.

## I.    BRIEF SUMMARY

Shortly after Child was born in 2015, Child's paternal grandmother, Natasha Ray ("Grandmother"), was appointed as temporary guardian with the consent of the father. Over the course of nearly five years, Child's parents, Anthony Lowman ("Father") and Kayla Morgan-Smart ("Mother") (collectively "Parents"), contested the on-going temporary guardianship. Importantly, Parents were never found to be unfit parents. In fact, the magistrate court expressly determined after a trial that there were no grounds to grant Grandmother's petition for a "permanent" guardianship. The magistrate court revisited the temporary guardianship order multiple times, extending and modifying it to allow Parents increased visitation in an effort to wind down the temporary guardianship and reunify Child with Parents in a thoughtful and deliberate manner. It is important to note that it was only *after* the temporary guardianship extensions were entered in this case that the legislature amended Idaho Code section 15-5-207(5)(d) to allow for only one extension of a temporary guardianship.

In the summer of 2021, the magistrate court entered several judgments holding Grandmother in contempt for failing to comply with its orders, including those requiring Grandmother to make Child available for visits with Parents, and terminating her temporary guardianship effective August 2, 2021. Grandmother appealed to the district court, and Seiniger filed a petition to intervene and a notice of joinder in Grandmother's appeal, purportedly on behalf of Child. Neither Grandmother nor Seiniger filed an opening brief with the district court. Instead, several months later, Grandmother filed a new notice of appeal from a new judgment of contempt entered by the magistrate court in September 2021. Again, neither Grandmother nor Seiniger filed an opening brief. The district court subsequently dismissed the appeal after determining Grandmother failed to establish good cause for failing to comply with its scheduling order.

On appeal to this Court, Grandmother and Seiniger argue the merits of the magistrate court's decisions to terminate the temporary guardianship and hold Grandmother in contempt. With respect to the termination of the temporary guardianship, the thrust of their argument is that the magistrate court (1) exceeded its jurisdiction by granting Parents visitation rights that increased in several phases prior to the termination of the temporary guardianship, and (2) erred by refusing to consider medical/psychological evidence regarding the impact on Child if the guardianship were

2

terminated. Grandmother also argues that the magistrate court exceeded its jurisdiction by appointing parenting coordinators to implement a plan to reunify Child with Parents. Concerning the contempt orders, Grandmother argues that her due process rights were violated by the magistrate court because she was unable to competently testify in her defense during trial due to harassment and intimidation by Parents, their counsel, and law enforcement.

Critically, Seiniger was never appointed by the magistrate court to represent Child and has no authority to pursue this appeal. Additionally, Grandmother has not assigned in her opening brief to this Court any error in the district court's discretionary decisions to dismiss her appeal for failure to submit timely opening briefs. As such, we affirm the decisions of the district court and strike the petition to intervene and notice of joinder filed by Seiniger.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  First Petition for Temporary Guardianship

Child was born on July 12, 2015, when Parents were about eighteen years old. Parents and Child lived with Grandmother (Father's mother) at her residence in Eagle, Idaho for about the first six months of Child's life. The family then moved to Utah to live with Grandmother's sister.

About three months after moving to Utah, when Child was about nine months old, Grandmother learned from other family members that Child "was ill, and at risk of abuse or neglect." Grandmother traveled to Utah, and Mother agreed to transfer Child to Grandmother's care. Grandmother returned to Idaho with Child and sought medical care. According to Grandmother, "the [d]octor who examined the child discovered evidence of neglect by the children's parents, which caused the [p]ediatrician to make a report to CPS at that time." Father subsequently filed for a divorce against Mother, which is the subject of the companion case to this appeal (*Lowman v. Morgan-Smart*, No 50973). Thereafter, Child resided with Grandmother, her partner, and their daughter.

Several months later, shortly after Child's first birthday, Grandmother filed a petition to be appointed temporary guardian of Child after Father threatened to "take" Child from her care. Her petition claimed that Father, who had returned to Idaho a few months earlier, was homeless, refused to care for Child when visiting Grandmother, and was unwilling to take any financial responsibility for Child's care. The petition further claimed that Mother, who resided in Utah, was unable to provide care for Child due to mental health issues and had previously neglected Child. Father subsequently filed a declaration in support of Grandmother's petition, which corroborated

3

her account of Mother's fitness to care for Child. He also signed a consent to entry of an order appointing Grandmother as temporary guardian of Child. The record suggests that Father needed a temporary custody arrangement for Child so he could enlist and serve in the United States Army.

The magistrate court appointed Grandmother as Child's temporary guardian a week after the petition was filed. At that time, Child was about fourteen months old. By its terms, the temporary guardianship was set to terminate in six months unless a "permanent" guardian was appointed before that time. The term "permanent" guardianship is used here to distinguish it from the temporary guardianship that was ordered, but the term is not meant to imply that a guardianship cannot be terminated The magistrate court also appointed attorney Jack Van Valkenburgh "to represent the minor child in the proceedings before the court, [with] the powers and duties of a guardian ad litem." At some point during the following year, Father enlisted in the military and was stationed in Colorado, while Mother moved to Emmett, Idaho. Father would later return to Idaho after being honorably discharged by the Army and moving in with his new girlfriend's parents in Boise sometime in spring of 2018, when Child was a toddler.

**B. Second Petition for Temporary Guardianship**

One year after the original guardianship petition was filed, Grandmother filed a second petition for appointment as Child's temporary guardian to replace the original appointment order, which had expired. By this time, Child was about twenty-six months old. Father did not consent to the guardianship, but instead filed an answer denying many of the allegations set forth in Grandmother's petition. The magistrate court held an initial hearing a week after Father's answer was filed. Five days later, the magistrate court entered an order treating Grandmother's second petition as a motion to renew the original temporary guardianship and renewing the temporary guardianship for a three-week period through November 8, 2017, the date set for a contested hearing on Grandmother's second temporary guardianship request.

After a contested hearing on November 8, 2017, the magistrate court ordered the temporary guardianship to continue for another six months, until May 8, 2018, and set a trial date to adjudicate the merits of Grandmother's petition for "permanent" guardianship for March 5, 2018. However, on the day of trial, Grandmother and Parents agreed to continue the temporary guardianship for a period of twelve weeks (from March 5, 2018, to May 28, 2018) so the parties could explore a potential settlement agreement. The magistrate court scheduled a hearing for May 24, 2018, to review the terms of any potential settlement agreement or to reschedule trial, if necessary.

However, the parties did not reach an agreement during this twelve-week period, and, during the May 24 review hearing, the magistrate court set a trial date for September 12, 2018. The magistrate court also directed Grandmother's attorney to prepare another order extending the temporary guardianship.

About two weeks before trial on Grandmother's petition for permanent guardianship, Jack Van Valkenburgh filed a report of guardian ad litem, which recommended that Grandmother be appointed as Child's permanent guardian. His report highlighted that Child, then three years old, "ha[d] no attachment to either of her parents[,]" and that "ending the guardianship at this time could damage" Child. His report further concurred with Child's counselor, Maribeth Horan, who recommended that Parents visit Child at Grandmother's home on a consistent basis to help build Child's attachment to Parents.

A two-day trial commenced on September 12, 2018. Grandmother called attorney Wm. Breck Seiniger, Jr., as a witness. Seiniger was an attorney for Grandmother's partner and was a long-time friend; he had spent time with Grandmother and Child in their home. He testified that Grandmother had "been very loving" towards Child, and that Grandmother's and Child's bond was as close as Grandmother's bond with her own daughter. Horan, Child's counselor, testified that Child needed to develop an attachment to Parents by gradually increasing Parents' visitation, which could take somewhere between six months and two years. When asked if she had a recommendation on whether the guardianship should continue, Horan indicated that she did not. However, she further clarified that she would like to see Parents work on "attachment stuff" and that Child should remain with Grandmother during that process. Mother testified that she would like to see a transition plan for a period of approximately six months. Grandmother testified she "[a]bsolutely" supported Horan's transition plan and would also support a future recommendation from other professional counselors if they suggested increasing visitation or terminating the guardianship. Van Valkenburgh testified that Parents had no "track record of stability," recommended that the guardianship continue to allow the building of an attachment between Child and Parents and explained that he had been informed by Horan that visits with Parents were traumatizing Child.

At the end of the first day of trial, the magistrate court shared its preliminary impression of the evidence presented, indicating that Parents had achieved stability and questioning whether there were any grounds at the time of trial to grant Grandmother permanent guardianship. The

5

magistrate court indicated it was inclined to allow Grandmother to have continued temporary guardianship to facilitate a reasonable transition from her custody to Parents' care. The matter was recessed so that the parties could explore a plan to reunify Child with Parents. Specifically, the parties agreed to allow Dr. Phares Book, a psychologist, to participate in the case and provide recommendations as to how Child could be reunified with Parents. Dr. Book's report was filed about six months later.

In his report, Dr. Book acknowledged that Father had since remarried and that the marriage "appears to be a strong mobilizing and stabilizing force in caring for [Child]." He also recognized that Mother—whose mental health was "stable under medication management"—was also soon to be married and that her new relationship appeared to be a strong stabilizing force. However, Dr. Book explained that he "was not confident" that Parents could "manage their anger and relationship with [Grandmother and her partner] and if either of them were to have full or partial custody, they would likely potentially remove the child from their primary attachment provider which would not be good for the child." Consequently, Dr. Book made three primary recommendations. First, he recommended that Grandmother maintain full guardianship of Child. Second, he recommended that weekend visitations and daily phone calls cease between Child and Parents and that short day visits at Grandmother's home should be allowed. Third, he recommended that a parenting coordinator or mediator should be appointed to help the family implement a transition schedule that would allow, for example, a full day visit with Parents when Child was four to five years old (she was approximately thirty-four months old at the time of the report) and one overnight visit per week with Parents when she was five years old (and increasing the number of overnight visits by one each week on Child's birthday). Dr. Book's recommendations did not include a definitive time for termination of the guardianship.

Father objected to Dr. Book's recommendations, arguing they were a "long term parenting plan" rather than the transition schedule he was employed to create. Father further argued that the guardianship, based on Dr. Book's proposed overnight visit schedule, could last over eight years, despite the fact that (1) Parents were acknowledged to be stable, (2) Parents had no proven history of abusing or neglecting Child, and (3) Child was "clearly attached to the parents and is comfortable in the parents' home." Dr. James Davidson, a forensic psychologist, was subsequently retained by Father to conduct a forensic review of Dr. Book's evaluation. In his review, Dr. Davidson criticized Dr. Book's report "as unreliable"—except for Dr. Book's direct observation

of the parent/child interactions—because it "failed to address the referral issue and the model standards and guidelines of [the Association of Family and Conciliation Courts], [American Psychological Association], and [American Academy of Matrimonial Lawyers] . . . ." The report further criticized Dr. Book's use of the "primary attachment" concept as "misleading and outdated" as children form multiple positive attachments to caregivers and Dr. Books recognized that Child "is being well cared for at this time by all of the adults involved."

On November 22, 2019, the permanent guardianship trial resumed for a second day. Ultimately, at the end of trial, the magistrate court concluded there were no grounds for granting Grandmother a permanent guardianship because Parents could provide a stable home for Child and had not abandoned her. Critically, that determination has never been challenged. However, rather than terminating the temporary guardianship and ordering that Child be reunified with Parents, the magistrate court reasoned that Idaho Code section 15-5-207(4), as it then existed, granted it broad authority to "make any other disposition of the matter that will best serve the interest of the minor." It then determined it was in Child's best interest to continue the temporary guardianship "indefinitely" to ensure that the reunification of Child with her Parents was done in a way that was in Child's best interest.

About a month after the trial, the magistrate court entered a written judgment continuing the temporary guardianship indefinitely, but also granting visitation rights to Parents and ordering the parties to appoint a parenting coordinator "for the purposes of reviewing the situation of the parties and issuing such direction as he or she deems appropriate for the purpose of reunification of the minor child with the biological parents." The judgment also explicitly recognized that the burden of proof was on Grandmother to establish the necessity of continuing the temporary guardianship in future proceedings:

> This temporary guardianship is not to be understood as a permanent guardianship. In any subsequent proceedings, the burden of proof shall remain upon the temporary guardian to establish that the temporary guardianship should, in the best interests of the minor child, be continued. The biological parents shall not have the burden of proving that the temporary guardianship should be terminated.

The parties subsequently accepted Jeffrey Moreno as parenting coordinator. Moreno has a clinical license in social work and was authorized to be a parenting coordinator under former Idaho Rules of Family Law Procedure 716 (later renumbered I.R.F.L.P. 1002). As the parenting coordinator, Moreno had court-delegated authority to make certain decisions concerning custody matters that

7

were binding on the parties unless they were challenged in the magistrate court. *See* I.R.F.L.P. 716.

### C. Grandmother's objections to the parenting coordinator's decisions

About nine months after the magistrate court continued the temporary guardianship, Father filed a motion to terminate the guardianship because of, among other things, ongoing visitation disputes between Parents and Grandmother. Grandmother opposed the motion, arguing in part that Parents' disregard for social distancing guidelines during the COVID-19 pandemic presented an undue risk to the health of Grandmother's own mother, who resided with Grandmother.

In August 2020, Moreno filed a decision outlining a three-phase transition plan to reunify Child with Parents beginning in January 2021. Grandmother filed an objection to Moreno's decision, arguing that the decision failed to include an analysis of Child's best interests and was contrary to the recommendations of Dr. John Jambura, Child's pediatrician, and Carol Griffith, a social worker and licensed professional clinical counselor.

In December 2020, the magistrate court conducted a three-day evidentiary hearing to consider Grandmother's objection to Moreno's decision and allow Parents to present their positions. During the hearing, the magistrate court excluded testimony concerning Parents' alleged abuse, abandonment, or neglect of Child when she was born. The magistrate court explained that Grandmother previously failed to meet her burden to establish grounds for a permanent guardianship despite "ample opportunity" to develop evidence concerning issues of abuse or neglect at the earlier trial. Thus, the magistrate court would not permit these issues to be relitigated.

The parties presented conflicting testimony concerning Child's mental health and the best plan for reunification. Grandmother presented the testimony of Dr. Jambura and Griffith. Grandmother also introduced as an exhibit a psychological assessment of Child performed by Dr. Lyndsey Evans, a licensed psychologist with the Neurobehavior Center for Health in Utah, who diagnosed Child with separation anxiety disorder and post-traumatic stress disorder with dissociative features. Based on Dr. Evan's assessment, Dr. Jambura recommended that parental visitations cease until Child's condition stabilized. Parents presented the testimony of Tara Lzicar, a licensed clinical professional counselor, as well as Moreno, Van Valkenburgh, and Mother. Lzicar testified that Child's symptoms likely failed to meet the diagnostic criteria for post-traumatic stress disorder in children under the age of six. Both Lzicar and Moreno testified that visitations should continue.

Ultimately, the magistrate court denied Grandmother's objection and found that Moreno's decision promoted the best interest of Child in reunifying with Parents. The magistrate court refused to allow relitigation of grounds for a permanent guardianship and reiterated that the temporary guardianship would end. It further explained that the court had "reservations" with the opinions of Dr. Jambura and Dr. Evans because each were predicated on allegations of Parents' possible abuse years earlier, near the time of the Child's birth, that were not fully presented to the court at the earlier trial:

> [F]rom the very beginning, I cautioned and told you all that I was going to have some skepticism. I was going to have some trouble with Dr. Jambura's opinion, which was based on Dr. Evans's assessment, because appropriately a professional can only deal with the information presented to them. They're not -- their job is not to evaluate the information given them, except in a medical sense.
>
> So, of course, Dr. Jambura and Dr. Evans could only deal with the information they had. But that's information that I determined is not appropriate to be part of the consideration for ending this temporary guardianship. And I've made my determination clear a number of times, including at the beginning of this session.
>
> So while I believe their opinions are competent, I have some reservation about accepting them in large part because of a considerable amount of the information is based on an allegation of possible abuse from five years ago that has not been presented fully to the [c]ourt by the choice of the parties. And I have not made that determination and made that clear.

Next, the magistrate court explained that Griffith's recommendation for a "long-term guardianship" conflicted with its determination that a permanent guardianship was not available because Grandmother failed to prove at trial that Parents had neglected, abused, or abandoned Child, or that Parents were unable to provide a stable home environment. With respect to Grandmother, the magistrate court noted its "overwhelming impression" that Grandmother was "not committed to this process" or "ending of this guardianship," which had frustrated reunification efforts for Child. Thereafter, the magistrate court entered a written order denying Grandmother's objection to Morano's decision to implement a three-phase reunification plan. It further authorized Morano to submit a revised plan, if necessary, because four months had passed since Morano filed his original plan.

About three weeks after the hearing, the magistrate court entered a judgment setting forth a three-phase reunification plan, which would begin on January 24, 2021:

> Phase 1: [Father] shall have the minor child on Saturday from 9am-6pm[.] [Mother] shall have the minor child on Sunday from 9am-6pm for four consecutive weeks.

9

Phase 2: [Father] shall have the minor child on Saturday from 9am until 9am on Sunday[.] [Mother] shall have the minor child on Sunday from 9am until 9am Monday for four consecutive weeks.

Phase 3: [Father] shall have the minor child on Friday from 9am until 9am on Sunday. [Mother] shall have the minor child on Sunday from 9am until 9am Tuesday for eight consecutive weeks.

Further, because Grandmother, unbeknownst to Parents, had taken the Child to see Dr. Arvind H. Vaz of St. Luke's Children's Center and Neurological Medicine, for another evaluation after the evidentiary hearing in December, the January 2021 judgment also contained a provision requiring Parents and Grandmother to inform each other of all medical appointments and allowing all of them to attend and participate in medical evaluations and treatment:

Any treatment prescribed by any physician, counselor or other health care provider shall continue during the transition. The temporary guardian and parents shall keep each other informed of all appointments. The temporary guardian and parents each shall be entitled to attend and participate in any evaluation, appointment or treatment.

Two weeks after the judgment was entered, Moreno entered an amended decision to immediately return Child to Parents' custody. In the decision, Moreno noted that Grandmother continued to prevent Parents from participating in Child's medical appointments and observed, like the magistrate court, that Grandmother had "sought out yet another provider [Dr. Arvind Vaz] to treat the minor child[,]" without informing or allowing the Parents to take part in the evaluation., Moreno criticized Dr. Vaz's PTSD diagnosis because it was based on "self-reported data from only one party."

Moreno further stated that visitation had been "inconsistent at best due to the inability of the parties to work together" and that Grandmother refused visitation for Child and Parents on two occasions. According to Moreno, Grandmother withheld visits after filing documents with the magistrate court that she thought supported her position and treated court orders as mere suggestions:

No legal intervention from the [magistrate court] has been implemented without objections or flat-out refusals from the guardian. The orders are not followed or respected by the guardian and appear to be a mere suggestion until the next objection, motion, or professional can be found to support the guardian's agenda/position.

Moreno further stated that Grandmother ignored multiple requests for medical information and refused to communicate with him:

> Since the trial, recording of the minor child has continued, visits have continued to be missed, the guardian refuses to communicate with the parenting coordinator, another evaluation was completed without the parents, the minor child was placed on anti-anxiety medication (based on prior reports of alleged abuse). The parenting coordinator is unable to get releases of information from the guardian in order to communicate with the child's providers (despite multiple requests) for ongoing monitoring of the child. The best interests of the child do not seem to be a factor in providing an accurate picture of the entire dynamic of parents and guardians in the implementation or coordination of care for the minor child with regard to the guardian.

According to an entry in the case summary, dated February 1, 2021, reflects the filing of a notice terminating Moreno as the parenting coordinator with the magistrate court two days after Moreno's amended decision was issued. It does not appear from the record on appeal that any further action was taken on Moreno's amended decision.

### D. Grandmother authorizes Seiniger to represent Child

About three weeks after the magistrate court entered its judgment implementing the three-phase reunification plan, Seiniger, at the request of Grandmother, filed a motion to be appointed counsel for Child, who was then five years old. He filed a declaration in support of the motion and a notice of limited appearance pursuant to Idaho Rule of Civil Procedure 11.4. In the declaration, Seiniger explained he wished to represent Child pro bono with respect to "legal issues" in a "limited capacity" under Idaho Rule of Civil Procedure 11.4. Specifically, Seiniger claimed Van Valkenburgh's inability to cross-examine witnesses, produce witnesses, make objections, or engage in motion practice violated Child's due process rights. Seiniger further claimed the magistrate court's judgment for "reintegrating" Child with Parents "is *ultra vires*" because it amounted "to a custody determination which is beyond the authority of a guardianship proceeding." Seiniger also acknowledged several potential conflicts of interest, including: (1) his "long-standing friendship with [Grandmother and her partner]," (2) that he previously represented Father "in a small unrelated matter[,]" (3) and that he previously testified in this matter concerning his observations regarding Grandmother's home. Nevertheless, he stated he was satisfied that representing Child would not violate Idaho Rule of Professional Conduct 3.7.

About two weeks later, Parents filed an "Objection to the Appointment of Seiniger as Attorney for [Child]." However, their filing is not included in the record on appeal. One week later, on March 3, 2021, Seiniger withdrew his motion. Despite never having been appointed as attorney for Child, Seiniger subsequently filed a motion for clarification, reconsideration, and

11

relief from judgment on behalf of Child. In the motion, Seiniger explained he had withdrawn the motion to be appointed counsel because he did not believe that appointment was required under Idaho Code section 15-5-207(7). He further argued that Child's due process rights were violated because Child was not represented by counsel in prior proceedings and the magistrate court's phased reunification plan exceeded its subject matter jurisdiction. Van Valkenburgh joined Seiniger's motion.

At a hearing in May 2021, the magistrate court addressed Seiniger's ultra vires argument and rejected Seiniger's claim that its phased transition plan was a legal determination of custody for Doe. Instead, the magistrate court explained its decision determined appropriate visitation, between Child and Parents as part of a reunification plan. Parents' custody of Child once reunification was achieved would have to be determined in their separate divorce proceeding.

### E. Contempt Proceedings

Between March and August 2021, Parents filed several motions for orders of contempt against Grandmother for her failure to abide by the January reunification judgment; however, none of these motions appear in the record. Grandmother's counsel was granted leave to withdraw from this matter in March 2021. Grandmother filed a notice that she would appear pro se about a month later. She subsequently filed an application for a public defender, and five days after submitting that application, attorney John L. Runft, private counsel, filed a notice of appearance on behalf of Grandmother. The day after Runft appeared as counsel, Grandmother moved to vacate the date of the contempt trial on the grounds that Runft did not have adequate time to prepare. The motion to vacate the contempt trial was filed two days before the trial was scheduled to begin.

About two weeks before Grandmother's contempt trial was scheduled to begin, Mother moved to terminate the temporary guardianship. The basis for her motion was an amendment to Idaho Code section 15-5-207(5)(d), effective April 13, 2021, which prohibited temporary guardianships from being extended more than once and limited the extension period to six additional months. *See* Act of Apr. 13, 2021, ch. 187, 2021 Idaho Sess. Laws 513–14. In response, Van Valkenburgh filed a declaration stating that, should Child be removed from Grandmother's custody or be required to see Parents during visitation, she would "likely . . . suffer irreparable damage," as indicated by the third declaration of Dr. Jambura previously filed with the magistrate court.

12

On May 28, 2021, the magistrate court held a trial on the contempt charges against Grandmother. At the outset of the trial, the magistrate court rejected Grandmother's request to vacate the contempt trial, noting that Grandmother had known she needed counsel for three months. Following the presentation of evidence, the magistrate court found Grandmother guilty of eighteen counts of contempt for willfully refusing to allow Father to visit Child at various times between April 18, 2020, and April 9, 2021, and three counts of contempt for placing unauthorized conditions or restrictions on the visits. The magistrate court further found Grandmother guilty of twelve counts of contempt for willfully refusing to allow Mother to visit Child between April 18, 2020, and April 9, 2021, one count of contempt for failing to sign up for the "Our Family Wizard" parenting app, three counts of contempt for requiring Mother to travel to Grandmother's home to pick up Child in contravention of the court's order, and one count of contempt for failing to sign forms required by the successor parenting coordinator. The magistrate court sentenced Grandmother to eight weekends in the Ada County jail for eight of the contempt convictions while reserving judgment on the remaining convictions. The magistrate court further set the termination date of the temporary guardianship for August 2, 2021, at 9:00 a.m.

Thereafter, Grandmother continued to withhold visitation and failed to inform Parents of Child's medical appointments between June and July 2021. On July 26, 2021, Mother brought a motion for seven new counts of contempt against Grandmother.

On August 2, 2021, the temporary guardianship terminated in accordance with the amended judgment of contempt. That same day, the magistrate court held a hearing on the new contempt charges against Grandmother. During the hearing, Cody Specht, Mother's counsel, asked the magistrate court to address his request to direct law enforcement to remove Child from Grandmother's home as the guardianship had ended but Child had not been returned to Parents. The magistrate court declined, explaining that contempt was the proper avenue to pursue, and that "the family law court [in the divorce proceeding was] the place to take up that question." Thereafter, Specht asked the magistrate court, "what's to stop somebody from taking a gun and going over there and taking this kid?" and further warned that people were "armed up" and that "[w]e are prepared to do that today."

Following Specht's statements, on August 4, 2021, a hearing was held in two other cases, *Ray v. Smart*, Case No. CV01-21-11954 (Ada Cnty. Mag. Ct.), and *Ray v. Lowman*, Case No. CV01-21-11964 (Ada Cnty. Mag. Ct.), on Grandmother's motion for a protection order against

13

Mother and Father. Following argument, the magistrate court in those cases granted a temporary protection order prohibiting Mother from contacting Grandmother or Child, or coming within 300 feet of Grandmother's home, until August 10, 2021. The magistrate court dismissed the case against Father, finding that no threat was attributable to Father.

On September 13, 2021, the magistrate court conducted another contempt trial on the new counts alleged by Mother, and Grandmother was found guilty on all counts. The magistrate court, however, declined to impose any fine or jail time on these counts.

## F. Dismissal of Intermediate Appeal

On June 10, 2021, Grandmother filed a notice of appeal from the magistrate court's judgment on contempt from the first trial ("First Appeal"). On June 23, 2021, she filed an amended notice of appeal, which listed the following issues for appeal:

    a.   Whether the [m]agistrate [c]ourt in a guardianship case lacked jurisdiction in matters of custody and acted *ultra vires* in so adjudicating matters of custody;

. . . .

    c.   Whether the Judgment is ineffective and void for failure to comply with the requirements of IRCP Rule 54 (a)(1), Rule 75(i)(j)(k) and (l), and the due process clause of the 14th Amendment to the U.S. Constitution ;

    d.   Whether [Grandmother]'s conduct in acting on relevant, unrebutted medical advice to prevent imminent, irreparable harm to the minor child (i) was contrary to the visitation / custody orders of the court, (ii) constituted contempt, or (iii) was excusable conduct because of emergency or good faith necessity to protect the child.

On June 22, 2021, Seiniger filed a petition to intervene in the appeal and a notice of joinder in appeal on behalf of Child.

Following a hearing on June 24, 2021, the district court entered an order temporarily remanding the matter to the magistrate court to address three issues:

First, entry of a written order that meets the requirements of Rule 75(I)(3); Second, to resolve the Motion for Clarification filed regarding the January 2021 Judgment and conform that Judgment to Rule 54, I.R.C.P., so that it can be appealed; Third, to determine whether the apparent absence of an affidavit in support of the Motion for Contempt filed January 30, 2019, by [Father] against [Grandmother] deprived the [m]agistrate [court] of jurisdiction to enter a finding of contempt against [Grandmother] on Counts 1 through 7.

(Footnote omitted.) The case was stayed pending receipt of the magistrate court's response.

On July 7, 2021, the magistrate court entered its order finding Grandmother in contempt of court, which addressed the "first and third issues" on remand, according to the district court.

14

According to the district court, "[t]he remaining issue was resolved by way of a Judgment on All Counts of Contempt filed on September 14, 2021."

At a hearing on July 27, 2021, the district court dissolved the stay and announced a briefing schedule for Grandmother's intermediate appeal of the first contempt judgment. Grandmother's counsel was directed to memorialize the briefing schedule in writing, serve it on all parties, and file it with the district court. The briefing schedule directed Grandmother's and Child's opening briefs to be filed by September 15, 2021, Parents' briefs by October 13, 2021, and any reply briefs by October 27, 2021. Oral argument was scheduled for November 4, 2021.

According to the district court, "[Grandmother]'s counsel did not file the briefing schedule as directed." Instead, on August 27, 2021, he filed a motion to vacate and reset briefing schedule, supported by a declaration of counsel reciting the schedule, and seeking an extension to address issues which had not yet been decided by the magistrate court and were not the subject of the instant appeal. The district court, by way of an annotation to the proposed order, denied the motion on September 2, 2021, because no good cause had been shown for extending the briefing schedule:

> The matters currently set before the [m]agistrate [c]ourt are not the subject of the current appeal [and] are not automatically incorporated therein. No good cause has been shown for extending the briefing schedule for the matters currently on appeal. Absent a stipulation to extend the current schedule, the Motion is Denied.

Thereafter on September 9, 2021, Grandmother filed a new motion for extension of time to file her opening brief, relying on Idaho Appellate Rule 34(d), which permits extensions only when there is "a clear showing of good cause." The district court denied the motion without prejudice because it omitted information required by Rule 34, such as the number of days needed for the extension.

On September 16, 2021, one day after her opening brief was due, Grandmother filed an amended motion for extension of time to file an opening brief. According to the district court, the motion, "arguably, provided the information missing, albeit in a form that was neither sworn nor verified." Grandmother did not request a hearing on the motion. The district court did not act on the amended motion and the deadline for Grandmother's opening brief was not extended. Grandmother never filed an opening brief. Seiniger did not file a motion for extension of time or an opening brief relative to his June 10, 2021, notice of appeal.

On October 27, 2021, Grandmother filed a new notice of appeal, this time from the second judgment of contempt entered by the magistrate court on September 15, 2021 ("Second Appeal"). Grandmother provided the following list of issues on appeal:

    a. Whether the [m]agistrate [c]ourt in a guardianship case lacked jurisdiction in matters of custody and acted *ultra vires* in so adjudicating matters of custody;

    b. Whether the [magistrate c]ourt's denial of [Grandmother]'s motion to vacate and re-set the trail [sic] date of May 28th, 2021, when her new counsel first appeared on May 25th, 2021, and alleged lack of time to sufficiently prepare for trial, in criminal contempt proceedings under IRCP Rule 75, deprived [Grandmother] of her due process rights under the 14th Amendment to the U.S. Constitution;

    c. Whether [Grandmother]'s conduct in reliance on relevant, material, and unrebutted medical diagnosis, advice, and treatment of the child and in light of [Parents]' outrageous conduct, acted to prevent imminent, irreparable harm to the minor child contrary to visitation / custody orders of the court constituted an affirmative defense of emergency and good faith necessity to protect the child against the charges of contempt.

    d. Whether the Judgment is ineffective and void for failure to comply with the requirements of IRCP Rule 54 (a)(1), Rule 75(h)(i)(j)(k)(l)(m)[.]

Seiniger filed a notice of joinder in appeal on behalf of Child.

On November 2, 2021, the district court entered a scheduling order for the Second Appeal, which directed that Grandmother and Seiniger file opening briefs no later than thirty-five days following the notice of filing of transcripts.

On November 4, 2021, the district court convened for oral argument on the First Appeal, in accordance with the briefing schedule it announced on July 27. The district court began the hearing by recounting its scheduling order on the First Appeal, the various motions to extend time, and explained its view that the original appeal was moot:

> A new notice of appeal was filed. As I read it, the new notice of appeal relates to the order that Judge Bieter issued pursuant to my order temporarily remanding the case and entering a stay. It didn't appear to me that there were new issues being raised by this new notice of appeal that are different than the ones that were being raised by the previous notice of appeal.
>
> . . . .
>
> Well, I have to say that procedurally, the file is kind of a mess. There are things going back and forth. My intention for remanding it was to get a final order, which I thought then would be the subject of your original appeal. It seems to me that we've either skipped over that step, and now there's a new appeal.

16

> I guess I'm wondering: Does everyone agree that the original appeal that I temporarily remanded and has now been returned is now moot, and that this new notice of appeal is the only one left that we need to address?

Seiniger responded that he was confused, explaining that he believed the magistrate court still needed to rule on a pending motion for reconsideration, clarification, or relief from judgment. The district court stated it was under the impression that Judge Beiter's order issued in response to the district court's remand order answered its questions and told Seiniger he could include that issue for the appeal. At the conclusion of the hearing, the district court reiterated that the opening brief (on the Second Appeal?) was "to be filed and served within thirty-five days of the date of the notice of the filing of the transcript.

About a week later, on November 10, 2021, Grandmother filed a motion to extend time to file the transcript and augmentations to the transcripts in relation to her Second Appeal. The district court granted the motion, and extended Grandmother's deadline by seven days.

On the day Grandmother's opening brief was due in the Second Appeal, Grandmother filed multiple motions, including a motion to extend time to file her opening brief. However, Grandmother did not provide a proposed order for extension of time, but instead scheduled a hearing on the motions. During that hearing, the district court expressed doubt that the Second Appeal continued to be viable. The district court did, however, allow Grandmother to file a brief showing cause why the Second Appeal should not be dismissed.

On June 15, 2022, Seiniger filed a memorandum opposing dismissal of the Second Appeal, arguing that dismissing the appeal would deny Child due process. Grandmother's counsel also filed a declaration in support of extending time for Grandmother to file her opening brief, but did not file her memorandum until one day after the deadline had passed.

On June 21, 2022, the district court entered an order dismissing both appeals. The district court made two holdings relevant to this Court's review. First, the district court dismissed Grandmother's First Appeal, filed on June 10, 2021, because "no opening briefs were filed, and no objections were raised to the [district c]ourt's finding that the original appeal had been abandoned by [Grandmother]." In the same order, the district court also dismissed Grandmother's Second Appeal after determining good cause had not been shown for her failure to file any opening briefs by the date they were due under its scheduling order.

Grandmother and Seiniger appealed to this Court.

## III. ANALYSIS

### A. Seiniger's petition to intervene and notices of joinder in the first and second appeal are stricken because Seiniger does not have authority to represent Child.

Seiniger raises a variety of issues on appeal on behalf of Child. However, the magistrate court never appointed Seiniger to participate in the guardianship proceedings as Child's counsel. Rather, Seiniger assumed this role at Grandmother's request while Grandmother was Child's temporary guardian. Before we address Seiniger's arguments, we must first determine whether Seiniger has authority to represent the Child at all in this matter.

"Guardianship proceedings in Idaho are governed by statute." *Doe II (2010-15) v. Doe III* (*In re Guardianship of Doe & Doe I*), 150 Idaho 432, 434, 247 P.3d 659, 661 (2011). "Idaho Code sections 15-5-204 and -207 govern the conditions and procedures for appointing a guardian of a minor." *Murray v. Dalton* (*In re Guardianship & Conservatorship of Doe*), ___ Idaho ___, ___, 558 P.3d 1057, 1065 (2024). To protect a child's interest in these proceedings, the Idaho Legislature vested the magistrate court with authority to appoint child advocates. *See* I.C. § 15-5-207(7). Under section 15-5-207(7), the magistrate court has discretion to appoint an attorney or guardian ad litem for the minor based on the minor's maturity:

> The court shall appoint an attorney to represent the minor if the court determines that the minor possesses sufficient maturity to direct the attorney. If the court finds that the minor is not mature enough to direct an attorney, the court shall appoint a guardian ad litem for the minor. The court may decline to appoint an attorney or guardian ad litem if it finds in writing that such appointment is not necessary to serve the best interests of the minor . . . .

I.C. § 15-5-207(7). "Notably, section 15-5-207(7) previously mandated that upon the filing of a petition, the court was required to appoint an attorney to represent the minor, and that the attorney would have all the powers and duties of a guardian ad litem." *In re Doe*, 164 Idaho 84, 87, 425 P.3d 285, 288 (2018). "However in 2005, the [l]egislature, recognizing the distinct roles that attorneys and guardians ad litem play, amended section 15-5-207 to allow for the appointment of an attorney based on the minor's maturity." *Id.*; *see also* Act of Mar. 23, 2005, ch. 113, § 1, 2005 Idaho Sess. Laws 364.

The critical distinction between an attorney representative and a guardian ad litem lies in the roles that they play. While an attorney's role is to advance the child's interests based on the *wishes* of the child, a guardian ad litem's role is to advocate for the best interests of the child, which at times may diverge from the child's wishes. *See Guardian ad litem*, Black's Law

Dictionary (12th ed. 2024) ("[I]t is necessary to determine whether the lawyer has been appointed as a guardian ad litem . . . charged with representing the child's best interests, or as an advocate, serving as counsel to the child." (quoting Homer H. Clark Jr. & Ann Laquer Estin, *Domestic Relations: Cases and Problems* 1078 (6th ed. 2000)); *see also Estate of Leonard, ex rel., Palmer v. Swift*, 656 N.W.2d 132, 142 (Iowa 2003) (quoting *ABA Standards of Practice* pt. IX, §§ A–2, B–4) ("[W]hile a guardian ad litem should take the child's point of view into account, the child's preferences are not binding . . . The child's attorney should represent the child's expressed preferences and follow the child's direction throughout the course of litigation."); 43 C.J.S. *Infants* § 431 ("[T]he role of counsel for a child differs from role of a guardian ad litem or next friend in that, typically, an attorney is an advocate for the child while the guardian ad litem represents the child's best interests."); 43 C.J.S. *Infants* § 426 ("It is the guardian ad litem's duty to stand in the shoes of the child and to weigh the factors as the child would weigh them if his or her judgment were actually mature, and the minor was not in fact of tender years.")

In this case, the magistrate court appointed Jack Van Valkenburgh as Child's guardian ad litem on September 20, 2016. At that time, Child was approximately fourteen months old and, therefore, too young to form subjective, articulable preferences that could be advanced by counsel. Thereafter, when Child was approximately six years old, Seiniger assumed the role as Child's lawyer at Grandmother's request while Grandmother was Child's temporary guardian. This situation presents two problems for Seiniger's contentions on appeal.

First, Seiniger does not direct this Court to any authority that permits a temporary guardian to hire counsel for a minor ward in a guardianship proceeding. This comes as no surprise because, as discussed above, the Idaho Legislature vested the *magistrate court*, not temporary guardians, with the authority to appoint child advocates in guardianship proceedings. Idaho Code § 15-5-207(7). Accordingly, participation of an attorney for a child in a guardianship proceeding must be approved by the magistrate court, which never occurred in this case. Although Seiniger filed a motion to be appointed as Child's attorney, he later withdrew it after an objection was filed. Nevertheless, he then proceeded to file document after document, including on appeal, having never been appointed by any court to represent Child.

Second, Seiniger overlooks the fact that the magistrate court charged Van Valkenburgh, not Grandmother, with advocating for Child's best interests throughout this litigation. Importantly, Grandmother has her own interests in this case that may or may not be consistent with the best

interests of Child. While Van Valkenburgh could have requested the appointment of counsel to enable him to participate more fully in the proceedings (keep in mind he filed several reports and testified on several occasions), the record does not reflect that such a request was ever made.

The bottom line is Seiniger lacked authority to represent Child below and on appeal. Accordingly, Seiniger's petition to intervene and notices of joinder in the first and second appeal are stricken, and we will not address any substantive arguments he has made.

### B. Grandmother's failure to assign error to the district court's order of dismissal on intermediate appeal is dispositive.

The district court dismissed Grandmother's First Appeal, because "no opening briefs were filed, and no objections were raised to the Court's finding that the original appeal had been abandoned by [Grandmother]." The district court then dismissed Grandmother's Second Appeal after determining good cause had not been shown for her failure to file any opening briefs by the deadline. However, Grandmother's opening brief to this Court does not challenge any aspect of the district court's decisions. Instead, she argues the merits of the magistrate court's decisions to hold Grandmother in contempt and terminate the temporary guardianship.

"This Court will not search the record for error. We do not presume error on appeal; the party alleging error has the burden of showing it in the record." *Dep't of Fin., Sec. Bureau v. Zarinegar*, 167 Idaho 611, 627, 474 P.3d 683, 699 (2020) (quoting *State v. Garcia-Rodriguez*, 162 Idaho 271, 276, 396 P.3d 700, 705 (2017)). "Pro se litigants are not accorded any special consideration simply because they are representing themselves and are not excused from adhering to procedural rules." *Michalk v. Michalk*, 148 Idaho 224, 229, 220 P.3d 580, 585 (2009) (quoting *Nelson v. Nelson*, 144 Idaho 710, 718, 170 P.3d 375, 383 (2007)).

Here, Grandmother is representing herself on appeal and challenges various decisions made by the magistrate court. However, Grandmother's briefing does not challenge the district court's decision to dismiss the intermediate appeal. Consequently, Grandmother has forfeited any challenge to the magistrate court's decisions because she failed to assign, let alone demonstrate, any error in the district court's discretionary decisions. Accordingly, the decisions of the district court are affirmed.

### IV.    CONCLUSION

For the reasons set forth above, Seiniger's petition to intervene and notices of joinder in the first and second appeal are stricken, and the district court's orders are affirmed.

Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.